## SISTERS OF MERCY OF FREMONT, OHIO, in re Tax Exemption

Board of Tax Appeals, Department of Taxation of Ohio

No. 10045.   February 1, 1946.

422

This cause and matter came on to be heard and considered by the Board of Tax Appeals upon an application filed herein under date of May 18, 1945, for the consent of the Board of Tax Appeals to the exemption from taxation of a parcel of land and buildings thereon in Toledo Taxing District, Lucas County, Ohio, and described as being Lots 189, 190, 191 and 192 in the Swayne Place Subdivision located at the corner of Woodruff Avenue and Horton Street and known as No. 406 Woodruff Avenue in said city. Said cause was heard on said application, upon the evidence offered and introduced by and on behalf of the applicant at a hearing of the case before one of the members of the Board of Tax Appeals and upon the brief of counsel for the applicant.

It appears from the application and the evidence in this case that this property was acquired by the applicant by pur-

chase on or about August 15, 1941, and is a parcel of land 155 x 147 ft. located at the corner of the streets above named; and that on this parcel of land is a large residence building and a relatively large barn, both of which buildings have been remodeled and otherwise adapted by the applicant to the uses which it is making of the same.

From the application and the evidence it appears that the Sisters of Mercy of Fremont, Ohio, a catholic religious order, is a corporation not for profit under the laws of Ohio, and that it is incorporated and organized for the purpose of hospital and educational works; and the order and its members are actively engaged in carrying on such activities. In this connection it appears that the applicant operates and maintains St. Rita's Hospital at Lima, Ohio, Mercy Hospital at Tiffin, Ohio, and Mercy Hospital at Toledo, Ohio, which last named hospital property as we are advised, is located almost directly across the street from the property here in question. As to this it further appears, however, that no part of the property covered by this application for tax exemption is occupied or otherwise used by any of the student or graduate nurses who are employed at Mercy Hospital at Toledo or in any of the other hospitals owned or operated by the applicant. The buildings on and constituting a part of the above described property are used in part and to some extent in the conduct of a school thereon under the name of Regina Maria Art Studio in which class and individual instruction is given in sculpture and in painting and possibly in other subjects coming within the more definite and restricted meaning of the term art. Instruction in the art school is given by one of the sisters of the order who has charge of this work, who conducts her classes and gives her instructions in that part of the property here in question designated as the barn, which is on the rear end of the parcel of land here in question. Apparently, however, the major activity carried on in this building known as the barn is that involved in the printing or multigraphing of the many and various forms used by the applicant in the operation of the hospitals above named.

It further appears from the evidence that the principal use of the large building fronting on Woodruff Avenue is as a place of residence for twenty or more sisters, members of the order, who are employed as teachers at St. Catherine's Parochial School and at Central Catholic High School which are located at several and different points in the City of Toledo about a mile and a half or two miles from the property here under consideration. In addition to serving as a place of residence for the sisters of the order engaged in teaching at the

schools above named, this building is used as a place in which individual and group instruction is given by the sisters of the order in vocal and instrumental music, in English and mathematics and in, perhaps, a number of other subjects. With the exception of instruction in music, which is given by a resident sister in charge of the teaching of this subject, the teaching activities in this building are carried on in the evenings on Saturdays and at other available times by the sisters who are regularly employed in teaching at St. Catherine's Parochial School and at Central Catholic High School and who, as above noted, make their residence in this building.

The application for the exemption of the above described property from taxation is on the stated grounds (1) that this property is that of a public college or academy or a public institution of learning not used with a view to profit within the purview of §5349 GC, and (2) that the property in question is that of an institution used exclusively for charitable purposes within the meaning of §5353 GC. In this connection it may be observed in the consideration of the questions here presented that although the educational facilities in art, music and other subjects afforded by the applicant in the use of this property are open to the public without distinction as to race or creed presumably on the payment by students of reasonable fees for the instruction given, the houses or buildings in which this instruction is imparted cannot, as is suggested by counsel, be characterized as "public school houses" within the purview of §5349 GC, and this for the reason that this term "public school houses" as used in §5349 and in predecessor sections of the statutes of this state, means such school houses "as belong to the public, and are designed for schools established and conducted under public authority". Gerke, etc. v Purcell, 25 Oh St 229. Neither can we bring ourselves to the view under the evidence in this case that the school conducted by the applicant on the premises is a public "college", "academy" or "institution of learning" within the meaning of these terms as they are used in §5349 GC. Moreover, even if the educational activities carried on by the applicant on these premises could be properly characterized as those of a public college, academy or institution of learning within the meaning of this section, the property here in question would not on this ground be entitled to exemption from taxation unless the property devoted to the applicant's educational activities is used exclusively for charitable purposes under the provisions of §5353 GC. As to this, the Supreme Court of this state in the case of the Ursuline Academy of Cleveland v Board of Tax Appeals, 141 Oh St 563, held:

"Under §5349 or §5353 GC, property belonging to a public college, academy or institution of learning not publicly owned may be exempted from taxation only if used exclusively for a charitable purpose at the time the exemption is sought."

On the consideration of the questions here presented as the same are limited by the decision of the Suprme Court of this state in the case just noted, the Board does not doubt that the applicant, the Sisters of Mercy of Fremont, Ohio, is, as to its purposes and general organization, a charitable institution within the purview of constitutional and statutory provisions applicable in the consideration and determination of this case. As to this it is to be noted, however, that although the applicant is an institution devoted generally to charitable purposes, the question for consideration in a case of this kind, as is pointed out by the Supreme Court in the cases of **Wehrle Foundation v Evatt, 141 Oh St 467, Incorporated Trustees of the Gospel Workers Society v Evatt, 140 Oh St 185,** and **Ursuline Academy of Cleveland v Board of Tax Appeals,** supra, is as to the use made of the property as to which the exemption from taxation is sought. In this connection the Supreme Court in the case of **Wehrle Foundation v Evatt, supra,** held:

"While **Sec. 2 of Art XII** of the **Constitution** authorizes the General Assembly to exempt **institutions** used exclusively for charitable purposes, such provision is not self-executing. The extent to which the General Assembly has acted under such authorization is to exempt property belonging to an institution provided such property is used exclusively for charitable purposes."

Entertaining, as we do, this view as to the distinctly charitable character of the applicant as an institution, and keeping in mind the limitations imposed upon us by the above noted decisions of the Supreme Court of this state, we have been diligent in the consideration of the facts presented by the record in this case in order to determine whether the premises here in question or any part thereof can be exempted from taxation consistent with the fair intendment of the provisions of §5353 GC. In the consideration of this question and having in mind the educational activities of the applicant in and upon these premises, it is recognized that a school operated by a corporation not for profit incorporated and organized for the purpose, may be so conducted that the property used in carrying on the activities of the school may be

exempted as property used exclusively for charitable purposes. The **College Preparatory School for Girls v Evatt, 144 Oh St 408.** In this case Matthias, J., in speaking for the majority of the members of the Court, in his opinion said:

"The maintenance of a school for the benefit of the public is a charity. Gerke, Treas., v Purcell, supra. If the school is essentially a private institution, no such benefit is conferred. But where a school is operated to give service to the public generally, and is available to some without charge, the fact that tuition in a substantial amount is paid by others does not destroy the charitable character, so long as it extends charitable benefits to members of the public at large to an extent consistent with the continued operation of the school. It is upon this recognition of its obligation that its charitable character is determined."

. However, wholly aside from the admitted fact that this property is not used exclusively by the applicant in the conduct of its school activities therein, the evidence in this case does not, in our opinion, bring this case within the decision of the Supreme Court in the case just noted. In other words, we do not feel that this decision of the Supreme Court can be extended to cover the case here presented with respect to the educational activities carried on by the applicant in either of the buildings upon these premises without reading into the record facts not presented by the evidence as to the manner in which applicant's educational activities are carried on.

Further in consideration of the questions presented in this case, we are impressed with the fact that the dominant use of the building at the rear of these premises known as the barn is for the printing or multigraphing of the forms used by Mercy Hospital of Toledo owned and operated by the applicant on adjacent property across the street from this property. Assuming, as we do, that Mercy Hospital of Toledo is a charitable institution, we are permitted to say under the reasoning of the Supreme Court in its decision in the case of **Aultman Hospital Association v Evatt, 140 Oh St 114,** that this printing or multigraphing done by the applicant in this building is likewise a charitable use, and that this part of the premises in question is property used for a charitable purpose and is entitled to exemption from taxation.

A different situation is here presented as to the larger building, above referred to, fronting on Woodruff Avenue. As

before noted, the principal use of this building is as a place of residence of twenty or more sisters of the order, all but one or two of whom teach at St. Catherine's Parochial School and at the Central Catholic High School in the City of Toledo. The applicant, the Sisters of Mercy of Fremont, Ohio, does not own either of these school properties; but these schools, we assume, are owned and operated by the proper church authorities of the parish or the diocese, as the case may be. And these church authorities, presumably, pay to the applicant as a teaching order a stated compensation for the services of the sisters as teachers in these schools. Further, as to this, it does not appear that either St. Catherine's School or Central Catholic High School has any connection whatever with this or any other property owned and operated by the applicant; and, as before noted, is not located in the vicinity of the property in question. In the consideration of questions relating to the exception from taxation of convent property it may be well argued that a convent owned by a religious organization contiguous or adjacent to a parochial school owned and operated by such organization, and which convent houses sisters who teach in said school and who, as is often the case, receive little more than a sustenance compensation, is property devoted to and used for a charitable purpose in the same way as it can be said that the parochial school itself is a charitable use. Applying this principle and giving effect to the reasoning of the Court in the case of Aultman Hospital Association v Evatt, supra, this Board has from time to time exempted from taxation convent properties in this situation. However, the principle of law just noted is of little assistance to us in the present case with respect to the question as to whether the use of this property in housing these sisters is a charitable use. Aside from the consideration that the evidence in this case does not disclose the amount of compensation paid to or for these sisters for their services in teaching at St. Catherine's Parochial School and Central Catholic High School, respectively, or as to the compensation, if any, paid by or for these teachers for the accomodations received by them on this property, we know of no principle of law by which it can be said that this property is devoted to a charitable use merely by reason of the fact that the same is used for the purpose of housing or affording a home to these sisters who in other places far removed from the property in question, are engaged in activities which are charitable in their nature.

On consideration of this application for tax exemption

428

and of the evidence offered in support of the same, we are required to hold that the applicant, although itself a charitable institution, has failed to sustain the burden of showing affirmatively that the residence property here in question is used exclusively for charitable purposes.

It is, therefore, by the Board of Tax Appeals considered and ordered that the building above referred to as the barn, together with the land upon which said building is situated and a sufficient amount of additional land out of the premises to constitute a reasonable curtilage for this building, be and the same hereby is, exempted from taxation for the tax year 1945.

It is by the Board of Tax Appeals further considered and ordered that as to the residence building and the balance of the premises described in the application for tax exemption, said application be, and the same hereby is, denied.

BOARD OF TAX APPEALS